JEWEL TEA COMPANY, Appellant, vs. HIMMELSTEIN, Respondent.

*October 27—November 14, 1916.*

*Master and servant: Contract of employment: Termination: Wrongful discharge: Covenant not to engage in same business: Enforcement: Injunction.*

1. A contract provided that the services of an employee thereunder might be terminated by the employer at any time without notice if the employee should be found to have been guilty of negligence, inattention to his duties, shortage in his accounts, etc., or might be terminated at any time by either party upon giving to the other two weeks' notice thereof in writing. In an action based on said contract, findings by the trial court that the employer did not resort to either of said methods, but arbitrarily discharged the employee without notice and without cause and in violation of the contract, are *held* to be sustained by the evidence.

2. A further provision in said contract that the employee would not, while in the employment or within one year "after termination of his services with or without cause," engage in the same line of business, directly or indirectly, for himself or for any one else, or interfere in any way with the employer's trade, was not an independent condition of the contract which could be enforced regardless of an unlawful discharge of the employee; and in an action to restrain the employee, after his wrongful discharge, from violating such provision, the court might properly, in its discretion, deny that relief on the ground that the employer had itself breached the contract.

3. The termination of the employee's services "with or without cause," spoken of in the contract, must be construed to mean a termination in· one or the other of the two methods specified therein.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. ·*Affirmed*.

The appeal is from a judgment dismissing plaintiff's complaint and dissolving a temporary injunction.

The plaintiff is in the business of selling tea, coffee, and other commodities and has its principal place of business in Chicago, Illinois, and a branch office in the city of Oshkosh,

Wisconsin.   After several years' employment of the defendant by the plaintiff the two made a written contract on August 2, 1915, for the term of one year.   The following provisions, in substance, were contained in the contract in clauses numbered as follows:

(13) That defendant during his employment with the company and after the termination of his services, for any cause, will not divulge to any person not connected with the company any of its business methods, forms, names or addresses of customers, and that he would not at any time while in the employ of the company nor within a period of one year after the termination of his services, *with or without cause,* either: 1st, for himself or any other person, firm, or corporation, directly or indirectly, engage in the business of selling teas, coffees, etc., or other like merchandise handled by the company during his period of employment in any of the cities where delivery routes have been assigned or intrusted to him; 2d, that he would not, directly or indirectly, for himself or any other person or firm solicit or take orders for any such merchandise in any of such cities; 3d, that he would not in any way, directly or indirectly, solicit, take away, or interfere with any of the custom, trade, or patronage of the company in such cities.   "It is mutually understood and agreed by the parties hereto that the provisions of this thirteenth paragraph are the very essence of this contract, and that the company employs the manager upon the express condition that he agrees to each of the provisions thereof."

(14) It is further agreed that the services of the defendant under this contract may be terminated by the company at any time without notice in the event that the company shall find the manager has been guilty of negligence, inattention to his duties, shortage in his accounts, etc., otherwise the services of the defendant, under this contract, may be terminated at any time by either party upon giving the other party two weeks' previous notice in writing.

It appeared that defendant did not continue in the employ of plaintiff after September 11, 1915, and then or immediately thereafter commenced to work for another corporation engaged in a similar line of business and in the same district in which defendant had been working for plaintiff. By the original verified complaint it was recited that about August 28, 1915, plaintiff gave the defendant the two weeks' notice to terminate the contract and alleged that in conformance therewith the term of service was terminated September 11th, but also recites that on the same day, August 28th, it was agreed between the parties that defendant, after the termination of his services as manager, would remain in the employ of plaintiff as salesman, and then recites that defendant refused to comply with such agreement and left the service of plaintiff.

By the amended verified complaint the same contract of August 2, 1915, was relied upon and it was alleged that defendant continued in such employment until September 11th, but it omitted any reference to the giving of any notice to terminate the contract, but goes on to say that on August 28th plaintiff and defendant mutually agreed that at the end of the two weeks the accounts should be audited and thereafter, if it was desired, he could remain in the employ of the plaintiff, and recites that upon an audit on September 11th there was a shortage of $40.68, and that thereupon the authorized representative of the plaintiff notified defendant that on account of such shortage his services were thereby terminated under the terms of the contract.

The complaint contains further allegations to the effect that the defendant had valuable information as to the customers and business of the plaintiff, that it had required a long time and great expense to build up such business in Oshkosh and vicinity, and that were defendant to engage in said business for himself or some one else in the same line in that neighborhood it would do great and irreparable injury to the plaintiff.

After trial, findings were made to the effect that there was no modification of the contract of August 2, 1915, on the 28th day of August, 1915, or at any other time as alleged; that on the audit on September 11th $40.68 was found in favor of plaintiff, which was paid on the same day by defendant, and that no complaint was made on the part of plaintiff of any shortage in the account of defendant and the defendant was not discharged from his employment on the ground or on account of any shortage found or claimed in the defendant's account; also the following finding: "4. That on the 11th day of September, 1915, the plaintiff supplanted the defendant with another manager and arbitrarily discharged the defendant from his said employment under said contract without notice and without cause and in violation of the terms of said contract." Upon the findings judgment was entered dismissing the action and vacating the preliminary injunction, from which judgment an appeal was taken.

For the appellant there was a brief by *Friedrich, Teall & Hackbarth,* and oral argument by *F. A. Teall.*

For the respondent there was a brief by *Stewart & McDonald,* and oral argument by *F. C. Stewart.*

ESCHWEILER, J.    The appellant contends that there was no support for the fourth finding of fact above recited and that the court erred in directing judgment for the defendant. An examination of the evidence in this case satisfies us that it was sufficient to warrant the court in so finding.

Plaintiff sent a Mr. Arnold, its auditor, who made an audit on September 11th. This audit was quite a complicated matter, involving not merely an examination of the cash received by defendant and disbursed by him, but also a checking over of an inventory of many items of merchandise and premiums on hand and other matters, and when it was completed it showed the so-called shortage of $40.68, which was, when ascertained, promptly paid by defendant to the auditor and retained by the plaintiff. The nature of the items in-

volved in such audit and the method of doing the business under the contract was such that the court might well have concluded that there was no element of evil design on defendant's part in connection with such shortage and therefore no such breach of good faith as might in law, irrespective of the contract, amount to sufficient to terminate the relationship.

The defendant was the only witness on the trial testifying as to any conversation between himself and any representative of the plaintiff at which any such notice of termination of the contract as was alleged in the complaint could have been given, and his testimony is that nothing was said about his being discharged on account of the shortage or for any reason. There was therefore no evidence in the record to support the allegations of the complaint that there was a discharge of the defendant on account of such shortage.

It also appears without contradiction that on August 28th the defendant was at the home office in Chicago with one Purner and some discussion was had about the situation in defendant's office, and it appears from the testimony of Mr. Purner that on August 28th arrangement was made between himself and the plaintiff that he was to take the management of the Oshkosh branch as soon as defendant's accounts were audited and that was to be September 10th, and that a written contract to that effect was made between them on August 29th. This was before it was ascertained that there was any shortage. This fact is material only as an aid in determining what was the real situation between plaintiff and defendant on September 11th, but, with the other evidence as to what took place between the parties and the different attitudes the plaintiff had assumed in its several pleadings, makes sufficient basis for the disputed finding.

It is further contended by plaintiff that in any event the condition in the contract, by which defendant covenanted and agreed that he would not at any time while in the employ of the company nor within a period of one year after termination of his services, *with or without cause,* either enter into

business with any other company in the same line of business
or in any way interfere with plaintiff's customers or trade,
is an independent condition of the contract and can be en-
forced regardless of the question whether or not defendant
was unlawfully discharged by plaintiff, leaving plaintiff to
his remedy by action for any unlawful discharge.

The contract between these parties expressly provided for
but two ways in which it might be lawfully terminated.    One
authorized the plaintiff to terminate it without notice upon
ascertaining either that there was a shortage in defendant's
accounts or for certain other grounds specified.    The second
method provided was by two weeks' notice in writing by
either party of desire to terminate the contract.    The first
method necessarily requires some affirmative action by plaint-
iff in order to set it in operation; the mere occasion for it,
*i. e.* a shortage, would not automatically discharge the em-
ployee; it merely dispensed with any delay being between
the occasion and the discharge therefor when such was deter-
mined upon.

In the findings in this case it appears that the plaintiff did
not resort to either of these two methods to terminate the con-
tract, but did by its action remove or supplant defendant from
its employ and thereby itself breached the contract.    The
termination of his services, *with or without cause,* referred to
in the thirteenth paragraph of the contract, must be construed
to be a termination by one or the other of these two methods.
Having thus disregarded the contract itself, the court below,
in the exercise of that discretion which is always involved in
questions concerning the granting or refusing to grant re-
straining orders, might properly have felt that equity would
refuse its aid under the circumstances when asked to compel
the other party to such repudiated contract to live up to pro-
visions such as are sought to be enforced in this case.

*By the Court.*—The judgment of the circuit court is af-
firmed.